Victoria L. Nelson, Esq. (NV Bar No. 5436)
Email: vnelson@nelsonhoumand.com
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@nelsonhoumand.com
NELSON & HOUMAND, P.C.
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:   702/720-3370
Facsimile:    702/720-3371

*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

**Electronically Filed On: September 30, 2013**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>WILLIAM WALTER PLISE, AKA BILL PLISE,<br><br>Debtor. | Case No.  BK-S-12-14724-LBR<br>Chapter   7 |
| SHELLEY D. KROHN, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br>v.<br><br>MOUNTAIN SPRINGS DEVELOPMENT, LLC; 1406643 ALBERTA, LTD.; JON E. FIELD, as Trustee of the Commonwealth Asset Trust; DOE individuals 1-10; and ROE corporations 1-10,<br><br>Defendants. | Adv. No. BK-S-13-01046-LBR<br><br><br>**MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019** |
| VARDA JARIV, as Trustee of the Commonwealth Asset Trust,<br><br>Counterclaimant.<br>v.<br><br>SHELLEY D. KROHN, CHAPTER 7 TRUSTEE,<br><br>Counter-Defendant. | Date of Hearing:      November 19, 2013<br>Time of Hearing:      9:30 a.m.<br>Place: Courtroom No. 1, Third Floor<br>          Foley Federal Building<br>          300 Las Vegas Blvd., S.<br>          Las Vegas, NV 89101<br><br>Judge: Honorable Linda B. Riegle |

Shelley D. Krohn, the Chapter 7 Trustee in the above-referenced bankruptcy case and plaintiff in the above-referenced action (the "Trustee" or "Plaintiff") by and through her counsel, Victoria L. Nelson, Esq. and Jacob L. Houmand, Esq. of the law firm of Nelson & Houmand, P.C., hereby files a Motion to Approve Compromise and Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion").

The Motion seeks approval of a settlement agreement entered into between Mountain Springs Development, LLC ("MSD"), 1406643 Alberta, Ltd. ("Alberta Ltd."), the Commonwealth Asset Trust (the "Commonwealth Trust"), and Jon E. Field ("Field") (MSD, Alberta Ltd., the Commonwealth Trust, and Field shall be collectively referred to as the "Parties") pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Settlement Agreement").

The Motion is based on the following Memorandum of Points and Authorities, the Declaration of Shelley D. Krohn In Support of the Motion to Approve Compromise and Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Krohn Declaration"), which is filed separately and concurrently with this Court pursuant to Rule 9014(c)(2) of the Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada (the "Local Rules"), the Settlement Agreement, a true and correct copy of which is attached to the Krohn Declaration, the pleadings and papers on file herein, and any argument that may be entertained on the hearing of the Motion.

Dated this 30th day of September, 2013.

**NELSON & HOUMAND, P.C.**

/s/ Victoria L. Nelson

Victoria L. Nelson, Esq. (NV Bar No. 5436)
Jacob L. Houmand, Esq. (NV Bar No. 12781)
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:   702/720-3370
Facsimile:   702/720-3371

*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

-2-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  STATEMENT OF RELEVANT FACTS

1. On April 23, 2012, William Walter Plise (the "Debtor") filed a Petition under Chapter 7 of the United States Bankruptcy Code [Main Bankruptcy Docket No. 1]. See Krohn Declaration.

2. On April 23, 2012, Plaintiff was appointed as the Chapter 7 Trustee in this matter [Main Bankruptcy Docket No. 3]. See Krohn Declaration.

3. On March 14, 2013, Plaintiff filed a complaint against MSD and Alberta Ltd. alleging claims for relief for (1) alter ego, (2) avoidance of fraudulent transfer pursuant to 11 U.S.C. § 544(b) and N.R.S. Chapter 112; (3) recovery of fraudulent transfer pursuant to 11 U.S.C. § 550; and (4) turnover of estate property pursuant to 11 U.S.C. § 542 (the "Complaint") [Adversary Proceeding Docket No. 1]. See Krohn Declaration.

4. On April 4, 2013, Plaintiff filed a first amended complaint that included additional allegations against the Commonwealth Trust concerning a second deed of trust that was placed on certain real property located at 316 Bridger Avenue, Las Vegas, Nevada 89101 (APN Number 139-34-210-078) (the "Bridger Property"), MSD's only asset (the "First Amended Complaint") [Adversary Proceeding Docket No. 9]. See Krohn Declaration.

5. Although the First Amended Complaint contained allegations concerning the recording of a second deed of trust on the Bridger Property in favor of the Commonwealth Trust, the caption of the First Amended Complaint did not indicate that the Commonwealth Trust had been named as a defendant. See Krohn Declaration.

6. On April 4, 2013, Plaintiff filed a second amended complaint that correctly identified the Commonwealth Trust as a defendant in the litigation (the "Second Amended Complaint") [Adversary Proceeding Docket No. 10]. See Krohn Declaration.

7. On April 5, 2013, Plaintiff filed a Motion for Preliminary Injunction Freezing the Real Property Located at 316 Bridger Avenue, Las Vegas, Nevada 89101 (APN 139-34-210-078) (the "Motion for Preliminary Injunction") [Adversary Proceeding Docket No. 17]. See Krohn Declaration.

8.  On April 22, 2013, MSD filed an Answer to the First Amended Complaint (the "MSD Answer") [Adversary Proceeding Docket No. 24]. See Krohn Declaration.

9.  On April 22, 2013, MSD filed a Jury Demand [Adversary Proceeding Docket No. 25]. See Krohn Declaration.

10. On April 22, 2013, MSD filed a Motion to Dismiss the Second Amended Complaint (the "First Motion to Dismiss") [Adversary Proceeding Docket No. 26]. The First Motion to Dismiss seeks to dismiss the Second Amended Complaint on the grounds that Plaintiff violated Federal Rule of Civil Procedure ("FRCP") 15(a)(1)(A), incorporated by reference by Federal Rule of Bankruptcy Procedure ("FRBP") 7015, by amending her complaint more than once as a matter of right within twenty-one days of service. See Krohn Declaration.

11. On April 22, 2013, Field filed an Objection to Certificate of Service Reflecting Service On Jon Field As Director of 1406643 Alberta, Ltd. (the "Field Objection to Service") [Adversary Proceeding Docket No. 28]. The Field Objection to Service objected to service of the Second Amended Complaint on Field as the director of Alberta Ltd. on the grounds that Field had resigned as the director and secretary of Alberta Ltd. on July 31, 2008. See Krohn Declaration.

12. On May 3, 2013, Field filed a Motion to Dismiss the Second Amended Complaint (the "Second Motion to Dismiss") [Adversary Proceeding Docket No. 42]. The Second Motion to Dismiss seeks to dismiss Field as the trustee of the Commonwealth Trust on the grounds that Field resigned as trustee of the Commonwealth Trust on March 9, 2013, five (5) days before Plaintiff filed the Complaint. See Krohn Declaration.

13. On May 22, 2013, Varda Jariv, as the trustee of the Commonwealth Trust, filed an Answer to the Second Amended Complaint (the "Commonwealth Trust Answer") which included a counterclaim for relief against Plaintiff for "Attorneys' Fees and Costs" (the "Counterclaim") [Adversary Proceeding Docket No. 56]. Although the allegations in the Counterclaim are unclear, it appears that the Commonwealth Trust is seeking attorneys' fees and costs against Plaintiff based on FRBP 9011. See Krohn Declaration.

. . .

. . .

-4-

14. On June 6, 2013, Plaintiff filed a Motion for Leave to File a Third Amended Complaint (the "Motion to Amend") [Adversary Proceeding Docket No. 60]. See Krohn Declaration.

15. On June 25, 2013, Plaintiff filed a Stipulation and Order Regarding (1) Mountain Springs Development, LLC's Motion to Dismiss the Second Amended Complaint [Adv. Proc. Dkt. No. 26], (2) Jon E. Field's Motion to Dismiss the Second Amended Complaint [Adv. Proc. Dkt. No. 42], and (3) Plaintiff's Motion for Leave to File Third Amended Complaint [Adv. Proc. Dkt. No. 60] (the "Stipulation") [Adversary Proceeding Docket No. 66]. Pursuant to the Stipulation, Plaintiff is permitted to file a Third Amended Complaint, and MSD and Field will withdraw the First Motion to Dismiss and the Second Motion to Dismiss. See Krohn Declaration.

16. On June 26, 2013, the Plaintiff filed a Motion for Order Dismissing the Counterclaim Filed By the Commonwealth Asset Trust Against Plaintiff Pursuant to FRBP 7012, FRCP 12(b)(5), and (b)(6) (the "Motion to Dismiss Counterclaim") [Adversary Proceeding Docket No. 67]. See Krohn Declaration.

17. On June 26, 2013, the Court entered an Order Approving the Stipulation [Adversary Proceeding Docket No. 68]. See Krohn Declaration.

18. On July 23, 2013, the Parties requested that the Scheduling Conference, Motion to Dismiss Counterclaim, and the Motion for Preliminary Injunction be continued for thirty days in order to allow the Parties to engage in settlement discussions. See Krohn Declaration.

19. On July 25, 2013, the Court entered an Order Continuing the Scheduling Conference and Hearings on the Motion to Dismiss Counterclaim and Motion for Preliminary Injunction to September 13, 2013 at 9:30 a.m. [Adversary Proceeding Docket No. 76]. See Krohn Declaration.

20. The Plaintiff has now resolved the dispute with Field and MSD the Defendants at the settlement conference pursuant to the terms set forth in the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached to the Krohn Declaration as **Exhibit "1"**.

. . .

. . .

21. The Parties seek to resolve the outstanding claims and rights of Plaintiff, and to resolve all issues regarding the Second Complaint brought by Plaintiff against the Defendants. See Krohn Declaration.

22. The Parties have negotiated and reached the settlement in good faith. See Krohn Declaration.

23. In settlement of the claims for relief in the Second Amended Complaint against Mountain Springs Development, the Commonwealth Asset Trust, and Field, the Parties agree that Field shall pay the bankruptcy estate One Hundred Ninety Thousand Dollars ($190,000) according to the following terms:

   a. No later than thirty (30) calendar days after the entry of the order approving this Agreement, Mr. Field shall pay the Trustee One Hundred and Twenty-Five Thousand Dollars ($125,000).

   b. No later than one hundred and eighty (180) calendar days after the entry of the order approving this Agreement, Mr. Field shall pay the Trustee the remaining Sixty-Five Thousand Dollars ($65,000).

   c. No later than ten (10) calendar days after the entry of the order approving this Agreement, Mr. Field shall execute a deed of trust in favor of the Trustee in the amount of One Hundred and Ninety Thousand Dollars ($190,000) that is secured by the real property located at 2055 Alcova Ridge Drive, Las Vegas, Nevada 89135 (Parcel Number 164-02-220-014) (the "Alcova Ridge Property" and "Deed of Trust"). The amount secured by the Deed of Trust shall be reduced by any and all payments made by Mr. Field to the Trustee.

   d. No later than ten (10) calendar days after the entry of the order approving this Agreement, Mr. Field shall execute a waiver of any homestead exemption Mr. Field may be entitled to claim under Nevada or Federal law in Alcova Ridge Property in the amount of One Hundred and Ninety Thousand Dollars ($190,000). The amount of the homestead exemption waived by Mr. Field shall be reduced by any and all payments made by Mr. Field to the Trustee.

. . .

. . .

  e.  No later than ten (10) calendar days after receipt of One Hundred and Ninety Thousand Dollars ($190,000), the Trustee shall execute a reconveyance of the Deed of Trust and release of the waiver of the homestead exemption.

24. The Settlement Agreement also provides that Plaintiff agrees to release Field and Field Law, Ltd. from any legal malpractice claims that can filed by Plaintiff on behalf of the Debtor's bankruptcy estate for actions taken by Field in his individual capacity. The parties agree that this release of malpractice claims against Field individually and Field Law, Ltd. shall not constitute a release or settlement of any malpractice claims that may be asserted by Plaintiff on behalf of the Debtor's bankruptcy estate against any other third party that provided professional services to the Debtor including, but not limited to, James L. Moore and Mitchell D. Stipp. See Krohn Declaration.

25. The Settlement Agreement further provides that Field will assist Plaintiff with the administration of the Debtor's bankruptcy estate by providing any services, documents, or information requested by the Plaintiff. See Krohn Declaration.

26. On September 30, 2013, Plaintiff filed a Stipulation to Voluntarily Dismiss the Counterclaim Filed By the Commonwealth Trust [Adversary Proceeding Docket No. 81].

### III. LEGAL ARGUMENT

#### A. The Legal Standard for Approval of Settlement

The Bankruptcy Court may approve a compromise or settlement between a debtor and another party pursuant to Fed. R. Bankr. P. 9019(a), which provides the following:

> Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

Compromise and settlement agreements have long been an inherent component of the bankruptcy process. The Ninth Circuit recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." See Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). Accordingly, in approving a settlement, the Court

need not conduct an exhaustive investigation of the claims sought to be compromised. See United States v. Alaska National Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. See Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986). It is within the sound discretion of the bankruptcy court whether to accept or reject a compromise. See In re Carson, 82 B.R. 847 (Bankr. S.D. Ohio 1987).

The Ninth Circuit has identified the following factors for consideration in determining whether a settlement is reasonable, fair, and equitable:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re A & C Properties, 784 F.2d at 1381. The moving party is not required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. See In re Pacific Gas & Electric Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). In considering the factors, "a precise determination of the likely outcome is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." In re Telesphere Comm's, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted). Thus, rather than determining various issues of fact and law, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re Lion Capital Group, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

**B.    The Settlement Agreement is Fair and Equitable**

1.    The Probability of Success in the Litigation

Plaintiff alleges in the Second Amended Complaint that the Debtor fraudulently transferred approximately five hundred thousand dollars ($500,000) to MSD and Field. Plaintiff also alleges that a deed of trust recorded against the Bridger Property in favor of the

Commonwealth Trust was intended to hinder, delay, and defraud creditors. Plaintiff further alleges that Alberta Ltd. is the alter ego of the Debtor.

Plaintiff believes that she is likely to prevail in the litigation against the Defendants. However, all of the claims for relief in the Second Amended Complaint against the Defendants are fact-intensive and raise complex legal questions. As a result, it is difficult to state with much certainty if the Court would conclude that Plaintiff is entitled to recover the entire amount of the RBC Transfer for the benefit of the bankruptcy estate.

### 2. The Difficulties in Matter of Collection

It is likely that Plaintiff will encounter difficulties in the matter of collection if she is successful in her litigation with the Defendants. The Bridger Property is MSD's only asset and is subject to two deeds of trust. Moreover, it is likely that Field does not have the financial ability to satisfy the full amount of the RBC Transfer in the event that Plaintiff is successful at trial. Thus, the factor of difficulty in collection militates in favor of approving the Settlement Agreement submitted.

### 3. The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay

The litigation involved is complex because it involves significant bank records, factual findings, and nuanced legal issues. The litigation would also involve substantial time and expense because of the evidence that will need to be gathered and analyzed and also because the claims are intensely fact-based and likely will ultimately require a credibility determination from the Court of the parties' veracity and intent in their business relationship. The delay and expense to litigate the allegations in the Second Amended Complaint can be avoided altogether with the resolution provided in the Settlement Agreement. The Settlement Agreement resolves the Parties' claims to any rights in the Bridger Property and includes a release of all claims arising from the RBC Transfer. To avoid the delay, expense and uncertainty in the litigation, it is the most expeditious, cost effective, convenient, and least expensive for the Parties to amicably resolve the issues in the Second Amended Complaint to avoid prolonged litigation. Thus, this factor militates in favor of an order from this Court approving the Settlement Agreement.

4. <u>The Paramount Interest of the Creditors</u>

The Debtor's Schedule B provides that he only owns personal property in the amount of $4,738.71. This $4,738.71 figure includes a checking account ($988.71), a personal safe and computer ($250.00), assorted clothing ($250.00), a wedding ring and watch ($1,000.00), a 9mm Glock Pistol ($250.00), and an eighteen foot trailer ($2,000.00). Schedule C provides that the Debtor is exempting $2,738.71 of the $4,738.71 in assets. The only item of personal property that was not exempted, the eighteen foot trailer, is secured by a lien equal to its fair market value. Therefore, as of the Petition Date, the Debtor has had a no-asset bankruptcy case. The Settlement Agreement is in the best interests of the creditors and the Debtor because it will result in the recovery of one hundred ninety thousand dollars ($190,000) that can be used for the benefit of creditors. Accordingly, approval of the Settlement Agreement will result in the recovery of funds that can be distributed to unsecured creditors.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court enter an order approving the Settlement Agreement attached as **Exhibit "1"** to the Krohn Declaration.

Dated this 30th day of September, 2013.

NELSON & HOUMAND, P.C.

Victoria L. Nelson, Esq. (NV Bar No. 5436)
Jacob L. Houmand, Esq. (NV Bar No. 12781)
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*